**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-03027-001-TUC-RM (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Francisco Calderon-Lopez, | |
| Defendant. | |

Pending before the Court is Defendant Francisco Calderon-Lopez's Appeal (Doc. 31) from the Magistrate Judge's denial of Defendant's Motion to Dismiss Indictment (Doc. 22). On December 20, 2019, Defendant filed a Motion to Dismiss the Indictment (Doc. 22) and on January 9, 2020, the Government responded (Doc. 28). A hearing was held on January 16, 2020 before Magistrate Judge D. Thomas Ferraro, at which Judge Ferraro denied the Motion to Dismiss Indictment. (Doc. 29.) The Court held a hearing on the Motion to Dismiss on February 26, 2020. (Doc. 34.) For the following reasons, Defendant's Motion to Dismiss Indictment will be granted.

## I.    Background

Defendant Calderon-Lopez was arrested on the charge of illegal re-entry after deportation in violation of 8 U.S.C. § 1326 on October 29, 2019. (Doc. 31 at 2.) Magistrate Judge Jacqueline M. Rateau ordered Defendant released with conditions

pursuant to the Bail Reform Act (BRA) on November 1, 2019. (Docs. 6, 7.) Defendant was ordered to keep Pretrial Services updated with his contact information, refrain from traveling outside of Arizona (including a voluntary return to Mexico from immigration custody) and appear at all court proceedings. (Doc. 7.) The Government orally moved to stay the release order. (Doc. 6.) However, the Government's Motion to Stay Release was filed untimely, and Defendant was released from the custody of the United States Marshals and taken into custody by Immigration and Customs Enforcement ("ICE") due to a previously lodged immigration detainer. (Docs. 31, 32.) When Defendant was taken into ICE custody, he claimed a fear of returning to Mexico. (Doc. 32 at 2.) This stopped his pending deportation proceedings and initiated immigration court proceedings so that Defendant could assert his claim to an Immigration Judge. (*Id*.)

The Government filed an appeal of Judge Rateau's release order (Docs. 8, 15) and Defendant responded (Doc. 17). On November 26, 2019, this Court denied the Government's request for review of the release order and affirmed the release order and conditions of release. (Doc. 18.) However, Defendant remained detained by ICE. (Doc. 31.)

The indictment, filed on November 26, 2019, charges Defendant with one count of illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a). (Doc. 19.) An arraignment was set for December 13, 2019. (*Id*.) Defendant did not appear at the arraignment hearing and Pretrial Services informed the Court and the parties that Defendant had been deported to Mexico.

On December 20, 2020, Defendant filed a Motion to Dismiss, alleging that his Sixth Amendment right to counsel was violated by his deportation to Mexico and that dismissal with prejudice of the indictment is the appropriate remedy. (Doc. 22.) In its Response, the Government argues that Defendant's Sixth Amendment right to counsel was not violated by either his ICE detention or by his deportation to Mexico. (Doc. 28.) On January 16, 2020, Magistrate Judge Ferraro denied the Motion to Dismiss without oral argument and without issuing a Report and Recommendation pursuant to Fed. R.

Crim. P. 59(b)(1).

## II.   Discussion

### A. Sixth Amendment Right to Counsel

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense. . . The magistrate judge must enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). Although district judges may generally designate magistrate judges to hear and determine pretrial matters, a magistrate judge lacks the authority to enter an order denying a motion to dismiss an indictment. 28 U.S.C. § 636(b)(1)(A). Rather, the Magistrates Act provides that a magistrate judge may issue a Report and Recommendation that a district court deny a motion to dismiss. *Id.* As Judge Ferraro lacked authority to enter a final order denying the Motion to Dismiss and did not issue a recommendation, the standard of review in 28 U.S.C. § 636(b)(1) does not apply, and the Court will consider the Motion to Dismiss on the merits.

The Defendant argues that his detention and subsequent deportation under ICE's authority violated his right to counsel in his criminal case. (Doc. 22 at 4.) Defendant argues that his deportation is impermissibly interfering with the attorney-client relationship, including the ability to communicate and consult with his attorney and prepare a defense to the criminal charge. (*Id.*)

The Government argues that ICE had the authority to detain and remove Defendant after his release. (Doc. 28 at 2.) More importantly for purposes of this analysis, however, the Government contends that Defendant's deportation to and current residence in Mexico does not violate the Defendant's right to counsel under the Sixth Amendment, and therefore his criminal prosecution can proceed while he is in Mexico. (*Id*. at 5.) The Government suggests that Defendant's attorney may be able to communicate with Defendant in ways other than in-person meetings, such as telephone

1   calls or through his family members in the United States. (*Id.*) The Government asserts

2   that, because defense counsel can contact Defendant, whatever communications methods

3   are available while the Defendant resides in Mexico satisfy his Sixth Amendment right to

4   counsel. (*Id.*)

5       Like *United States v. Lutz*, Case No. CR19-00692-TUC-RM(BGM), 2019 WL

6   5892827 (D. Ariz. Nov. 12, 2019), this case involves a tension between lawful release

7   orders under the Bail Reform Act ("BRA") and actions taken by ICE under the

8   Immigration and Nationality Act ("INA"). *See also United States v. Munoz-Garcia*, Case

9   No. 19-01670-TUC-JGZ(EJM), 2020 WL 1929204 (D. Ariz. Apr. 21, 2020). That tension

10   results not from statutory language but from the failure of "two Article II agencies" to

11   "coordinate their respective efforts." *United States v. Barrera-Omana*, 638 F. Supp. 2d

12   1108, 1111-12 (D. Minn. July 23, 2009). However, unlike *Lutz*, here, Defendant's

13   detention in ICE custody did not result in a violation of Fed. R. Crim. P. 5.1. *See Lutz*,

14   2019 WL 5892827 at *4. Nor was Defendant held for an extended period of time after

15   being ordered released. *Id.* at *4-5. Thus, the issue before the Court is whether the

16   deportation of Defendant is violating his Sixth Amendment right to assistance of counsel,

17   and, if so, whether dismissal of the indictment is the appropriate remedy.

18       Defendant has a Sixth Amendment right to "consult with counsel, to review the

19   evidence against him[,] and to prepare a defense to the charge." *United States v.*

20   *Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. Nov. 12, 2015). "The fact that

21   ICE will not agree or cannot be trusted to delay deportation—that separate agencies

22   within the Executive Branch do not communicate and cooperate—cannot serve to deprive

23   a defendant of his rights" under the Constitution.  *United States v. Argueta-Espinoza*, No.

24   4:18MJ3133, 2018 WL 4492226, at *2 (D. Neb. Sept. 19, 2018).  The fact that ICE has

25   the authority to remove a defendant "does not necessarily mean that ICE may do so

26   without consequence in the defendant's criminal prosecution[.]" *Munoz-Garcia*, 2020

27   WL 1929204, at *2. By deporting defendants regardless of the resulting prejudice to

28   criminal prosecutions, ICE displays an "apparent willingness to prejudice the interests of

the people of the United States and the constitutional rights of the accused, with resulting waste of DOJ, court, and defense resources." *United States v. Boutin*, 269 F. Supp. 3d 24, 28-29 (E.D.N.Y. Dec. 20, 2017).  The problem in this case lies not with any action attributable to Defendant but instead with the fact "that two Article II agencies will not coordinate their respective efforts." *Barrera-Omana*, 638 F. Supp. 2d at 1111-12.  "It is not appropriate for an Article III judge to resolve Executive Branch turf battles" and "run interference for the prosecuting arm of the government." *Id.* at 1112.  If ICE is unwilling to exercise its authority to delay a deportation when a criminal prosecution is pending, "'it is a matter for the Executive Branch to resolve internally.'" *Boutin*, 269 F. Supp. 3d at 29 (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) (per curiam)).

If ICE jeopardizes a district court's ability to try a defendant by placing the defendant in immigration detention or removing him, "the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015); *see also United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings."). Dismissal of charges "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). A district court may dismiss an indictment under its supervisory powers "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *Id*. at 1091.

While the Government suggests that Defendant may consult with his attorney telephonically or via written or electronic communication, or even though family members in the United States, it is not the prerogative of the prosecution or ICE to dictate how Defendant is able to consult with his attorney. *Lutz*, 2019 WL 5892827, at \*5. The Court finds that Defendant's deportation to Mexico—a result of the prosecution's failure

to coordinate with ICE—has violated Defendant's Sixth Amendment right to counsel. Dismissal of the indictment is appropriate under this Court's supervisory powers to remedy the ongoing violation of Defendant's Sixth Amendment rights.

**B. Parole of Defendant into United States**

At the February 26, 2020 hearing before this Court, the Government argued that it offered to parole the Defendant into the United States for the December 13, 2019 arraignment and that Defendant, through defense counsel, did not take the necessary steps to ensure Defendant's presence at the hearing. Specifically, the Government stated that it contacted defense counsel about the possibility of paroling Defendant into the United States for the arraignment and did not receive a response. The Government stated that it would have arranged for Defendant to meet with federal agents at the Port of Entry, where Defendant would have been taken into custody and transported to the courthouse. After the arraignment, Defendant would again be transported to the border and removed to Mexico. The entire time, he would have been in custody, in violation of Magistrate Judge Rateau's release order. The Government further stated that it would have permitted defense counsel to meet with Defendant when Defendant was paroled into the country, implying that this would satisfy Defendant's Sixth Amendment right to assistance of counsel. The Government attorney admitted that he did not know how long it would take to make such arrangements for parole because he had never set up such an arrangement.

Defendant contends that the Government's suggestion that Defendant meet with his attorney while being paroled into the United States to attend court hearings impermissibly shifts the burden to the Defendant to appear for the parole process and does not remedy the Sixth Amendment violation. Defendant argues that there is no plausible reason why the U.S. Attorney could not coordinate with ICE to monitor criminal defendants who are ordered released into the community on conditions, and that the Government is essentially asking the Defendant and defense counsel to expend additional resources defending the case because the Government chose to prioritize Defendant's deportation over his criminal prosecution.

1    The Court finds that the availability of the parole process does not remedy the

2    Sixth Amendment violation that is occurring as a result of Defendant's deportation.

3    Parole enables Defendant to enter the United States and access his counsel only through

4    his cooperation and coordination with the Government. Furthermore, the parole process

5    places an additional burden on Defendant and defense counsel to arrange their

6    consultations and case preparation around the parole process and schedule. Such an

7    arrangement unduly impairs Defendant's Sixth Amendment right to counsel. *See*

8    *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("When the government

9    deliberately interferes with the confidential relationship between a criminal defendant and

10   defense counsel, that interference violates the Sixth Amendment right to counsel if it

11   substantially prejudices the criminal defendant.") Furthermore, as discussed *supra*, the

12   situation could have been avoided had the prosecution coordinated with ICE to pursue

13   Defendant's prosecution prior to his deportation.

14   Accordingly,

15   **IT IS ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 22) is

16   **granted**.

17   **IT IS FURTHER ORDERED** that the indictment in the above-captioned case

18   against Defendant Francisco Calderon-Lopez (Doc. 20) is **dismissed with prejudice**. The

19   Clerk of Court is directed to close this case.

20   Dated this 22nd day of May, 2020.

21

22

23   _____

24   Honorable Rosemary Márquez
     United States District Judge

25

26

27

28

- 7 -